587 S.E.2d 118

Robert L. **TOWNSEND**, Respondent,

v.

Patricia Joyce **TOWNSEND**, Appellant.

No. 3680.

Court of Appeals of South Carolina.

Heard Aug. 20, 2003.
Decided Sept. 29, 2003.
Rehearing Denied Dec. 18, 2003.

Flo Lester Vinson, of Florence, for appellant.

Robert L. Widener, of Columbia, for respondent.

GOOLSBY, J.:

This is an appeal from an order of the family court granting the respondent Robert L. Townsend's request for a reduction in child support. Patricia Joyce Townsend, Townsend's former wife and custodial parent of the children affected by the family court's order, appeals that reduction. We reverse.

## FACTS

The parties, who were married on March 12, 1993, have three children, one of whom is autistic. At the time of the divorce hearing on June 29, 2000, the children were six, five, and three years old. The father is a medical doctor while the

mother is a full-time homemaker. The father earned $250,000 a year or about $21,000 a month at the time of the divorce hearing.

A settlement agreement filed on July 5, 2000, set the amount of monthly child support at $3,250. When the parties entered into the agreement on June 29, 2000, the father had submitted his resignation to his employer, Dillon Internal Medicine, some thirty days or so before. The agreement was based on the father's "income as of that moment," that is, the date of the settlement agreement.[1] The family court approved the settlement agreement, incorporating it into its order of divorce.

As anticipated, the father left Dillon International Medicine in November 2000, four months after the family court filed its order on July 5, 2000. He opened his own medical practice on December 1, 2000, employing twelve employees. Approximately two weeks after he opened his medical practice, the father sought a reduction in his child support obligation.

Following the divorce, the father remarried, paid counsel fees to adopt his new wife's son, and bought a house that carries a mortgage of $185,000. In addition to his new home, the father owns a rental house. He also has five automobiles, including a Durango that he helped his new wife purchase after borrowing $27,000, and three collector Corvettes that cost him $915 a month. During the first five months of 2001, the father's current wife, using "marital funds," took "a couple" of vacations "for a couple of weeks at a time." The father also paid to fly his current wife, his mother, and his mother-in-law to and from Michigan for family visits.

The father's notarized, handwritten March 6, 2001 financial declaration places his gross salary and wages at $15,000 a month and shows him receiving an additional $550 a month in rental income. In other words, he earns approximately $186,000 a year.

---

1. The father acknowledged that when he negotiated the parties' agreement, he contemplated that his change in employment could result in a decrease in income. The father stated he specifically considered several alternative methods of calculating his income, but expressly agreed to an amount based on his current income, notwithstanding the fact that he would be leaving his employment with Dillon Internal Medicine and going out on his own.

The family court reduced the father's child support obligation by $895 a month, requiring him to make monthly payments of $2,355.

## STANDARD OF REVIEW

■ While the court of appeals may make findings of fact based on its own view of the preponderance of the evidence when reviewing a family court order[2], questions concerning child support are ordinarily committed to the discretion of the family court, whose conclusions will not be disturbed on appeal absent a showing of an abuse of discretion.[3] An abuse of discretion occurs either when the court is controlled by some error of law or where the order, based upon findings of fact, lacks evidentiary support.[4]

■ A substantial or material change of circumstances must occur to warrant a modification of child support.[5] Generally, a change in future circumstances within the contemplation of the parties at the time of a child support award affords no basis for a modification of the award[6], unless the future change is one that cannot be addressed at the time because of other considerations.[7] Moreover, a reduction in the earning capacity of a supporting parent does not necessarily require a reduction in child support.[8] Indeed, a reduction in child support cannot be based on a decrease in the noncustodial parent's income absent a strong showing by the latter that he or she can no longer make the support payments required by the earlier order.[9] Where the amount of child support is

2. *Kelley v. Kelley,* 324 S.C. 481, 477 S.E.2d 727 (Ct.App.1996).

3. *Mitchell v. Mitchell,* 283 S.C. 87, 320 S.E.2d 706 (1984).

4. *McKnight v. McKnight,* 283 S.C. 540, 324 S.E.2d 91 (Ct.App.1984).

5. *Calvert v. Calvert,* 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985).

6. *Id.* at 139, 336 S.E.2d at 889.

7. *Sharps v. Sharps,* 342 S.C. 71, 535 S.E.2d 913 (2000).

8. *Vestal v. Vestal,* 297 S.C. 215, 375 S.E.2d 355 (Ct.App.1988).

9. *Miller v. Miller,* 299 S.C. 307, 384 S.E.2d 715 (1989); *see generally Garris v. Cook,* 278 S.C. 622, 300 S.E.2d 483 (1983) (holding that the

based on a settlement agreement, the party requesting a modification has an even heavier burden.[10]

## ISSUE

█ Whether the family court erred in finding there had been a substantial or material change in circumstances to warrant a decrease in child support.[11]

## ANALYSIS

In our view, the father failed to make the strong showing necessary for a downward modification of his child support obligation for his three children. First, the father continues to maintain a high standard of living, notwithstanding his change of jobs. He has acquired a new home, helped his new wife to buy a new motor vehicle, paid for his new wife's vacations, paid for other trips for her and other family members, and made payments for three collector Corvettes each month in an amount that exceeds by $20 the amount of the child support reduction granted him by the family court.[12]

---

party seeking to modify a support obligation has the burden of proving a sufficient change of circumstances).

10. *Ratchford v. Ratchford,* 295 S.C. 297, 368 S.E.2d 214 (Ct.App.1988); 27 C.J.S. *Divorce* § 735, at 386 (1986).

11. The father attempts to couch an unappealed adverse evidentiary ruling by the family court as an "additional sustaining ground." *Cf. I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000) (The supreme court "chose to avoid using the term 'additional sustaining ground' in the present appellate court rules. Instead, the present rules provide simply that '[r]espondent's brief may also contain argument asking the court to affirm for any ground appearing on the record as provided by Rule 220(c), [SCACR].") (alterations in original). The ruling excluded certain evidence on the question of whether he voluntarily left his employment with Dillon Internal Medicine. The family court viewed the question of whether the father voluntarily left that medical practice as an issue resolved by the court-approved settlement agreement. We agree with the family court. *See* 27 C.J.S. *Divorce* § 735, at 387 (1986) (stating that evidence dealing with matters occurring before the entry of the original decree will usually be excluded).

12. *See Kielar v. Kielar,* 311 S.C. 466, 429 S.E.2d 851 (Ct.App.1993) (ruling that there was no material change in circumstances warranting modification of alimony or child support where an anesthesiologist

Second, while we recognize the father's earnings have decreased since he left Dillon Internal Medicine to open his own medical practice, as he planned to do before the divorce, nothing in the record persuades us that his earning potential has been adversely affected by the move.[13]  His current gross income as reflected in his financial statement is still quite substantial and of an amount sufficient for him to honor the agreement to pay the sum of $3,250 a month in child support, an agreement the family court incorporated into its order.

Finally, the supreme court's decision in *Sharps*[14] does not aid the father.  Aside from the fact that the case deals with alimony and not child support (which receives closer court scrutiny than does alimony), here the obligation had been set a mere six months before, not thirteen years before, as in *Sharps*.  The latter case also has no application where the events that brought about the change were put in motion prior to the entry of a settlement agreement.

**REVERSED.**

BEATTY and KITTREDGE, JJ., concur.

---

earning in excess of $300,000 a year at the time of the divorce later took a job paying $180,000);  *see also Eagerton v. Eagerton,* 265 S.C. 90, 95, 217 S.E.2d 146, 148 (1975) (ruling that a modification of child support payments was not warranted because of a change in the father's health and financial ability where his income dropped from approximately $200,000 annually to $100,000 annually, stating that the father "was a man of sufficient property and means to meet the ordered payments if minded to do so").

**13.**  *See* Roy T. Stuckey, *Marital Litigation in South Carolina Substantive Law* 591 (2001) ("The primary factors to be considered under the guidelines are the actual gross incomes and earning potential of both parties.").

**14.**  342 S.C. 71, 535 S.E.2d 913 (2000).